ROBISON *v.* STATE.

Opinion delivered September 26, 1927.

1. CRIMINAL LAW—ADMISSIBILITY OF EVIDENCE.—An affidavit and
   search warrant, whether sufficient or not, *held* admissible in a
   murder trial, to explain presence of deceased officer at the place
   of, and certain circumstances leading to, the killing.

2. CRIMINAL LAW—ADMISSIBILITY OF EVIDENCE.—In a trial for mur-
   der growing out of the search of defendant's premises for whiskey,
   packages of whiskey seized were admissible as tending to show
   the motive and the probable aggressor.

3. CRIMINAL LAW—INVITED ERROR.—In the trial of a filling station
   owner, who was appointed deputy sheriff to assist in running
   down automobile thieves, for murdering an officer searching his
   station for whiskey, cross-examination of defendant as to
   whether a man who stole cars was his lessee in charge of the
   station and one who got certain cars, *held* invited error, if any,
   being based on the direct examination.

4. HOMICIDE—ADMISSIBILITY OF EVIDENCE.—In a trial for murdering
   an officer searching defendant's premises for whiskey, testimony
   that defendant, on being told that deceased furnished informa-
   tion leading to a former raid, by other officers, said it was none
   of deceased's business what he did out there, *held* admissible as
   tending to show defendant's feeling toward deceased and a
   motive for killing.

5. HOMICIDE—INSTRUCTION AS TO SELF-DEFENSE.—Evidence in a pros-
   ecution for murder *held* to warrant an instruction that defendant
   could not rely upon self-defense, no matter how imminent his peril,
   after he armed himself with deadly weapons and assaulted
   deceased with intent to kill him or voluntarily entered into diffi-
   culty with such intent, and did not abandon the difficulty before
   firing the shot.

6. CRIMINAL LAW—REPETITION OF INSTRUCTIONS.—It was not error
   to refuse instructions fully covered by those given.

Appeal from Hempstead Circuit Court; *J. H. McCol-
lum,* Judge; affirmed.

*L. F. Monroe* and *Dexter Bush,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden
Moose,* Assistant, for appellee.

HUMPHREYS, J.    Appellant was indicted for the
crime of murder in the first degree for killing Will Goff,
and, upon a trial of the charge, was convicted of man-
slaughter and adjudged to serve a term of five years in

the State Penitentiary as a punishment therefor, from which judgment an appeal has been duly prosecuted to this court.

The assignments of error consist in the admission of certain testimony, the giving of instruction number 19 by the court, and the refusal to give instruction number 16 requested by appellant.

· The evidence introduced by the State showed that, on November 5, 1926, three officers, Gene Rooker, Clarence Baker and Will Goff, left Hope about dusk in a car to search the "Smiling Service Station" for whiskey. The station was owned by appellant, and was situated about one mile from Hope, on the Bankhead Highway. Rooker had filed an affidavit before W. G. Bright, a justice of the peace, that he suspected intoxicating liquor was concealed in appellant's house or premises, and a warrant directed the officers to search appellant's house. The justice of the peace had failed to sign the warrant. The officers stopped before reaching appellant's premises, consisting of a filling station, several tourist houses, and a main residence, a part of which was used for a store. They concealed themselves in the woods near the station, and observed a Ford touring car drive up to the side of appellant's place and stop, and appellant go out from his filling station to the car, and, after a few minutes, two men in the car get out and unload some sacks, which they took to the back yard, where there were two woodpiles. They saw them put one sack on one woodpile, one on the top of the other one, and one between the two. They also saw them go into the filling station and, after a short time, come out and stop in front, and, after meeting appellant, go back to the car. They then saw a Ford roadster come up and appellant get something out of the sacks and take to the car. They then saw a Ford coupe drive up and appellant again get something out of the sacks and take it to the car. The officers then approached the premises, Baker entering the back yard and Goff and Rooker entering the station from the front. Appellant was informed by

Goff and Rooker that they were there to search his premises, and produced the warrant. Appellant objected to the search, because it did not purport to charge those to whom it was directed to search for whiskey which might be concealed there for purposes of sale or for any unlawful purposes, and because the warrant was not signed. Appellant then went into the room right north of him, and came out and put his hand in his hip pocket and then pulled his hand out just as he came out of the door from behind the counter. The two officers, in company with appellant, went into the back yard, where they met Baker, and searched the premises, and found seventy-two eight-ounce bottles of whiskey in sacks at the wood piles. After they carried the whiskey to the car and were ready to go, Goff suggested to appellant that they go to the garage and make a search. Goff went to the garage with appellant, but found nothing. As they were returning, appellant a few steps in front, Goff told him to wait a minute until he searched him, whereupon appellant jumped and wheeled and threw his hand to his hip pocket, and told Goff that he should not search him. Goff then pulled his gun and cocked it, and had his left arm extended toward appellant, who was backing away from him. Appellant pulled his hand out of his hip pocket, and as it came out it flashed right in Goff's face, and, as Goff started to fall, the gun in his hand went off and fired toward the ground. As Goff fell, appellant fired again. Baker then pulled his gun and began shooting. Goff made no motion to shoot appellant, and never had his gun up from his hip pocket to a shooting position. Goff's pistol was fired only the one time. A fusillade followed between appellant and the other officers, resulting in the infliction of several wounds on appellant. Appellant was arrested in a short time after killing Goff, and incarcerated, where his wounds were later dressed. After being placed in jail, appellant said that if he had had a good gun he would have killed all of them.

Robert Evans testified that, about a year before the killing, he raided appellant's place of business, and

that, after the raid, appellant asked him where he got the information which caused him to raid the place, and when he told him that he acquired it from Will Goff, appellant said, ''Well, I will just tell you, it is none of Will Goff's damn business what I do out there.'' The packages of whiskey which were found and seized were exhibited to the jury.

Appellant testified, on direct examination, that he had been appointed deputy sheriff for the purpose of protecting his own property and to assist officers in running down car thieves. Several cars had been stolen, and one of them had been left near appellant's place of business, before he received his commission as deputy sheriff. A part of the time and up until about three weeks before the killing appellant had rented his place of business to a man by the name of Bush, who had complete control of same during the rental period. The prosecuting attorney was permitted to ask appellant, on cross-examination, if the very man who stole the cars, and was then in the Federal pen in Louisiana, was not his lessee and in charge of his station there, and asked him if that was not the man that got the Buick cars belonging to Dave Finley, and a Chevrolet car.

Appellant first insists that the court committed reversible error in admitting the affidavit and search warrant in evidence, because they were defective. It is unnecessary to discuss the sufficiency of the affidavit and warrant, as both were admissible in evidence to explain the presence of the officers at the filling station and the circumstances leading up to the killing.

Appellant next insists that the court committed reversible error in permitting the packages of whiskey to be exhibited to the jury. The killing grew out of the search of appellant's premises for whiskey, and the discovery and seizure were circumstances tending to show a motive for killing and who was probably the aggressor. *Weldon* v. *State,* 168 Ark. 534, 270 S. W. 968.

It is next insisted that the court erred in permitting the prosecuting attorney to ask appellant, on cross-

examination, if the very man who stole the cars and was then in the Federal pen in Louisiana was not his lessee and in charge of his station there, and in asking him if that was not the man that got the Buick cars belonging to Dave Finley, and a Chevrolet car. The cross-question was based upon the direct examination, and so invited error, if error at all.

It is next insisted that the court committed reversible error in permitting Robert Evans, a witness for the State, to testify that, about a year previous to the killing, he and other officers had made a raid upon appellant's premises, and that, shortly after the raid, appellant came to him and asked him who furnished the information leading up to the raid, and that he told him Will Goff had, whereupon he said that appellant told him that it was none of Will Goff's damn business what he did out there. We think this testimony admissible as tending to show appellant's feeling toward the deceased and the motive for the killing.

It is next insisted that the court committed reversible error in giving instruction number 19, which is as follows:

"The law of self-defense does not imply the right of attack. If you believe from the evidence in this case that the defendant, Oscar Robison, while the deceased, Will Goff, together with other officers present, were engaged in searching his premises for whiskey under a search warrant, armed himself with a deadly weapon, and sought the deceased with the felonious intent to kill him, or sought or brought on, or voluntarily entered into, the difficulty with the deceased with the felonious intent to kill him, and did not abandon or attempt to abandon the difficulty before the mortal shot was fired, then you are instructed that the defendant can not invoke the law of self-defense, no matter how imminent the peril in which he found himself."

The main objection to the instruction is that the evidence failed to show that Robison armed himself for the purpose of bringing on a difficulty with the

deceased, or that Robison voluntarily entered into the difficulty for the purpose of killing him, or for any other purpose. In other words, appellant contends that the instruction is abstract. The evidence tended to show that, before going into the back yard with the two officers who served the search warrant, appellant entered a side room, and, as he was coming out, placed something in his hip pocket, from which he later drew a pistol and killed Goff. The testimony of the State's witnesses also showed that appellant refused to be searched, and drew his pistol and unnecessarily fired upon Goff. We think the evidence detailed in the opinion as coming from the State's witnesses was sufficient to warrant the giving of instruction number 19.

It is appellant's next and last contention that the court committed reversible error in refusing to give instruction number 16 requested by him, which is as follows:

"The jury is instructed that, in passing upon the question of whether the defendant, at the time of firing the shot that killed the deceased, acted in self-defense, as defined by other instructions given by the court, it is your duty to place yourselves as nearly as possible in the position of the defendant at the time of the shooting, taking into consideration all the facts and circumstances that then and there surrounded the defendant, taking into consideration the excitement and confusion surrounding the situation, and the defendant should not be held to the same deliberate care in ascertaining the danger and the force necessary to repel it as would be used by a person in afterwards viewing the situation from a place of safety, uninfluenced by excitement or danger."

This instruction is fully covered by instructions numbers 6 and 11 requested by appellant. Those instructions are as follows:

"You are instructed that, to justify a killing in self-defense, it is not essential that the facts and circumstances should make it appear to the jury to have

been necessary; it is sufficient if the defendant honestly believed, without fault or carelessness on his part, that the danger was so urgent and pressing that the killing was necessary, either to save his own life or to prevent great bodily injury to him.

"You are instructed that, when a man is threatened with loss of life or great bodily injury, he is compelled to act upon appearances, and to determine from the circumstances surrounding him at the time as to the course he shall pursue to protect himself. In such cases apparent danger is as effectual for his justification as real danger is, and, when he is brought to trial for homicide, committed under such circumstances, the question for the jury is not 'Was the danger real?' or 'Did the necessity for the killing in order to avert it actually exist?' but 'Were the appearances such as to reasonably impress the defendant honestly with the belief, at the time, that the danger and necessity did exist? Did they so impress him, and did he act under their influence?' The jury is to judge of the reasonableness and honesty of his conduct from all of the circumstances surrounding him at the time, from his standpoint, and not from theirs."

No error appearing, the judgment is affirmed.